## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**LITTLE TRAVERSE LAKE PROPERTY OWNERS ASSOCIATION**, a Michigan non-profit corporation, **DOUGLAS JONES, L. GENE MORSE** and **LINDA MORSE,** in their capacities as **CO-TRUSTEES of THE LEROY and LINDA MORSE TRUST, MARY ANN SHUTZ,** in her capacity as **TRUSTEE of THE MARY ANN SHUTZ TRUST,** and **MARCIA SKJAERLUND,**

Case No.:

Hon.

       Plaintiffs,

v

**NATIONAL PARK SERVICE**,

       Defendant

### COMPLAINT FOR DECLARATORY RELIEF

Plaintiffs, by and through their attorneys, Fraser Trebilcock, state for their complaint for declaratory relief as follows:

### Nature of the Action

1.    This is a civil action for declaratory relief under the Administrative Procedures Act (APA) 5 U.S.C. §§ 551-706.  The claims arise from Defendant's violation of the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-4370, and its implementing regulations, 40 C.F.R. 1500-1508.  This action is brought pursuant to the right of review provision of the APA, 5 U.S.C. § 702.

2.    Defendant National Park Service (NPS) violated federal law by issuing its Finding of No Significant Impact (FONSI) in connection with the Leelanau Scenic Heritage Route Trailway Plan, now named the Sleeping Bear Heritage Trail ("the Trail"), to be located

in or near the Sleeping Bear Dunes National Lakeshore ("Lakeshore"), based upon an inadequate and faulty Environmental Assessment (EA) and *before* final decisions were made relating to the Trail's route and construction means and methods.

3.      Plaintiffs challenge Defendant's failure to meet its procedural and substantive duties required by NEPA by failing to adequately perform environmental review procedures in the EA regarding Segment 9 of the Trail as well as failing to supplement its findings and conclusions after substantial changes were made to the Trail.

4.      Plaintiffs seek:

      a.      An order declaring that Defendant NPS failed to comply with NEPA;

      b.      An order awarding Plaintiffs their reasonable attorneys' fees and costs associated with this litigation pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412; and

      c.      Such other additional and further relief as the Court deems just and equitable.

5.      The requested relief is necessary to preserve the status quo, to prevent unlawful agency action, and to prevent irreparable injury to the environment.

### Jurisdiction, Venue, and Basis for Relief

6.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-706.

7.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(e).

8.      Declaratory relief is appropriate pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 2201.

**Parties and Standing**

9.      Plaintiff Little Traverse Lake Property Owners Association ("LTLPOA ") is a Michigan non-profit corporation organized in 2004, and its membership is comprised of owners of property on or adjacent to Little Traverse Lake and Traverse Lake Road.  LTLPOA was formed, *inter alia*, to engage in activities designed to protect and enhance the environmental quality of Little Traverse Lake and adjacent property, which includes the areas affected by Segment 9 of the Trail.  It works to serve as a liaison between its 100+ members and the National Park Service on matters that directly affect its members and the surrounding environment.  The LTLPOA, through its members, has actively participated in those phases of the Trail's planning that were well publicized or for which notice was received.

10.      Plaintiffs Douglas Jones, L. Gene Morse and Linda Morse, in their capacities as Co-Trustees of The Leroy and Linda Morse Trust, Mary Ann Shutz,  in her capacity as Trustee of the The Mary Ann Shutz Trust, and Marcia Skjaerlund (collectively "the Individual Plaintiffs"), are the owners of real property in Cleveland Township, Leelanau County, Michigan contiguous to where Segment 9 of the Trail is proposed to be constructed.

11.      The Trail, as currently proposed, includes a minimum ten foot wide asphalt linear park to be constructed over or immediately adjacent to private property owned and occupied by the Individual Plaintiffs and a number of LTLPOA's other members.

12.      Implementation of Segment 9 of the Trail, as currently proposed, will adversely affect and cause irreparable injury to Plaintiffs' aesthetic, recreational, and environmental interests in the affected areas as a result of extensive tree cutting, paving, and excavation at areas designated as "critical dune habitats."  Construction of Segment 9 of the Trail as proposed will cause a significant environmental impact as a result of the degradation

3

of wildlife habitat, visual quality, solitude, and permanent changes to the topography, including wetlands and "critical dune areas."  Plaintiffs will sustain injury to their interests, and those of the LTLPOA's other constituent members, if the Trail is undertaken in the absence of a legally adequate and scientifically valid analysis of the Trail's natural and human environmental impacts and compliance with all federal laws.

13.     Defendant NPS is a subordinate agency of the United States Department of Interior, organized and existing pursuant to Title 16, Chapter 1, of the United States Code. NPS is the federal agency that took the final agency actions challenged herein.

<b><u>Factual Background</u></b>

**A.     <u>The Trail and Segment 9</u>**

14.     The Lakeshore is located in Leelanau and Benzie Counties.  Congress established the Lakeshore in 1970 by way of legislation acknowledging that "[i]n developing the lakeshore, full recognition shall be given to protecting the private properties for the enjoyment of the owners," and "[i]n developing the lakeshore the Secretary shall provide public use areas in such places and manner as he determines will not diminish the value or enjoyment for the owner or occupant of any improved property located thereon."  (16 U.S.C. §§ 460x(b) and 460x-5(d)).

15.     The Trail involves a non-motorized, paved pathway of approximately 27 miles running adjacent to and through the Lakeshore in Leelanau County for multi-use recreational purposes.  Planning for the Trail began in 2005, and as originally planned, the Trail was to be located entirely on public lands in the Lakeshore or within the road rights-of-way of M-22 and M-109.

4

16.     The Trail is comprised of 9 segments running south to north.  Segment 9, which is the segment at issue, was originally planned to run entirely within the road right-of-way of M-22 from CR 669 to CR 651.  However, as part of the EA, a proposed preferred alternative route (Alternative B) was identified calling for Segment 9 of the Trail to be routed on Traverse Lake Road for approximately 3 miles.

17.     Traverse Lake Road is a quiet, residential county road 2.7 miles from end to end.  Both ends of the scenic road connect with M-22, but it offers no shortcut to M-22 traffic. The paved surface is 22 feet wide; the shoulders are unpaved with mature trees close to road edge.  The north side of the road is bounded by National Lakeshore property and four private parcels.  The south side of the road is bounded by over 100 private parcels.  Both sides of the road are heavily wooded with many mature trees and wetlands.  Near the eastern end of the road, there are a series of sand dunes, some in excess of 50 feet in height with slopes greater than 1:3, that end at the paved portion of the road.  The critical dunes in this area completely cover the road shoulder for a distance of more than 700 feet.  (**Exhibit 1**, Photographs)

18.     The EA states that the Trail "will generally parallel M-22 and M-109, the major roads through the Lakeshore," as also initially promoted in publicized material describing the proposed Trail.  This statement is belied by the fact that 40% of Segment 9 of the preferred Alternative B Trail route does not parallel either M-22 or M-109, but rather, is routed down or near Traverse Lake Road.

19.     After the initial EA was issued, and the public review period closed on October 31, 2008, the EA was reissued in March, 2009 with revisions to Segment 9 of the preferred Alternative B.  Instead of Segment 9 being routed on Traverse Lake Road using the existing road surface, the EA called for the revised Segment 9 to be routed north at the west

end of Traverse Lake Road on an off-road boardwalk, and then *either* crossing private property within the county road right-of-way as a 10 foot asphalt path or on Lakeshore property up to 100 feet from the roadway centerline.

20.     Segment 9 of the Trail, as reflected in the preferred Alternative B, will result in extensive tree clearing including the removal of hundreds of mature trees, significant disturbance of wetland and wildlife habitat areas, and excavation of critical dune areas on the east end of Traverse Lake Road which are more than 50 feet in height, have a slope greater than 1:3, and cover the road shoulder for a distance of more than 700 feet.

21.     According to the EA, as constructed, the Trail width will be 10 feet wide with 2-foot rock shoulders requiring a 14-foot wide cut through the varied and environmentally sensitive terrain of Segment 9 of the Trail with additional tree clearing on each side to facilitate trail construction.  The EA does not reflect this change or the impact the Trail will have upon the natural and human environments of Segment 9.

22.     On March 30, 2015, in response to a Freedom of Information Act request seeking documents depicting the final route of Segment 9, the NPS stated that it is "unable to provide the requested documents as the final route of Segment 9 has yet to be determined." (**Exhibit 2**)

B.     <u>The Environmental Assessment</u>

23.     An EA was prepared in connection with the Trail.  The first version (**Exhibit 3**) was released for public review and comment in October, 2008.  Based on public comment, segments 1, 2, and 9 in the preferred Alternative B were revised.  A second version of the EA (**Exhibit 4**) containing minor revisions was released for public review and comment in March, 2009.  Both versions of the EA contain an "Overall Trailway Segments

6

Map" that depicts segment 9 of the Trail being routed on M-22 and *not* Traverse Lake Road. (**Ex. 3**, p. 2-12; **Ex.** 4, p. 10)

24.     As part of the public review and comment, a "Public Input Flyer" was distributed at several community meetings along with a map of the overall Trail route.  The same flyer and map are included in both versions of the EA.  (**Ex. 3**, pp. 3-108-109; **Ex. 4** pp. 103-104)  The map that was distributed as part of the invitation for public review and comment did not depict Traverse Lake Road as being on the proposed Trail route nor was it identified as a proposed alternative route.  By looking at the Public Input Flyer, a resident living on Traverse Lake Road would have no reason to believe that Traverse Lake Road corridor is any part of the proposed Trail.

25.     The vast majority of the written public comment received by the NPS in October, 2008 was in opposition to changing Segment 9 of the Proposed Trail route from M-22 to Traverse Lake Road.  Of all the comments received on all of the segments, 70% of comments were strongly opposed to the Alternative B routing of the Trail on or near Traverse Lake Road.  Nonetheless, in the revised EA, Segment 9 of the Trail was changed so that the preferred Alternative B route would not be limited to being located on Traverse Lake Road, but, instead, would be a ten foot off-road boardwalk and asphalt path on the north side of Traverse Lake Road either within the county road right-of-way or on Lakeshore property within 100 feet of the road centerline.

26.     The revised EA issued in March, 2009 is flawed, conflicting, and incomplete as it relates to Segment 9 of the Trail, including:

> a.     Factors considered in the 2009 EA recommending the preferred Alternative B included impacts to the environment and impacts to feasibility.  Numerical scores were assigned to subtopics within these two categories, however, the tables in the EA identifying the scores for

7

each subtopic were *never* re-evaluated after the route of Segment 9 was changed to include undisturbed wilderness, wetland, and critical dune areas.  For example, in Table 17 of the EA quantifying impacts to the environment, a score of "0- Existing; Negligible slope" is indicated under "topography" despite the fact that the Segment 9 Trail route will require extensive excavation of critical dunes more than 50 feet in height with slopes greater than 1:3.  Table 17 also indicates a score of "0" for wetlands, streams and soils despite the fact that the Segment 9 Trail route will cross wetlands and a creek. (**Ex. 4**, Appendix, Table 17)

b.    In Table 18 quantifying impacts to feasibility, a score of "0- Utilize existing road no modification" is indicated under "cost" despite the fact that the Segment 9 Trail route is intended to be a 10 foot off-road asphalt path that will require extensive dune excavation with retaining walls, boardwalks over wetland areas, building a bridge over a creek, and significant tree removal.  (**Ex. 4**, Appendix, Table 18)

c.    The EA identifies Segment 9 of the Trail as a 10 foot off road asphalt path on the north side of Traverse Lake Road.  The EA also indicates that for shared use paths, such as that now proposed for Segment 9, the "corridor" should be at least 10-12 feet wide.  Indeed, for those segments already built, a 20 foot wide cut was used.  In short, the EA does not identify the actual cut width necessary to build Segment 9, and consequently, the impact upon the environment or feasibility has not at all been addressed or analyzed in connection with Segment 9.  (**Ex. 4**, pp. 32 and 107)

d.    The 2008 version of the EA, with regard to tree removal in Segment 9, states: "Minimal tree removal is expected due to the wide spacing of the existing mature trees in this area."  That same statement is repeated verbatim in the 2009 version of the EA *even after* Segment 9 of the Trail route along Traverse Lake Road changed from an on-road trail using the existing chip-sealed surface to an off road asphalt path corridor at least 10 to 12 feet in width requiring a wide construction cut in heavily wooded areas.  (**Ex. 3**, p. 2-86; **Ex. 4**, p. 81)

e.    The 2009 EA, in the cost summary, identifies Segment 9 of the preferred Alternative B proposal as consisting of 2.43 miles of on-road bike lanes.  (**Ex. 4**, p. 122)  This is not consistent with the Trail as currently proposed in the preferred Alternative B route for Segment 9 which calls for off-road construction in woodlands, wetlands and creek, and critical dune areas.  There is no mention of costs associated with operation and maintenance, including the impact upon Cleveland Township Park.  Thus, the cost estimates are grossly understated.

    f.      The EA estimates Trail usage within the first 3 years at approximately 350,000-400,000 visitors per year with the majority of use occurring between the months of June and September.  (**Ex. 4**, p. 8)  Despite this, the EA makes no absolutely no mention of how this level of use will impact the human environment or efforts to mitigate the effect on private property, Cleveland Township Park or residents living on Segment 9 of the Trail route.  As well, no studies or data on the impact of the increased traffic were made.

    g.      Analysis of the "Impacts of the Trailway Alternatives" are identical and unchanged between the two versions of the EA despite the fact that Segment 9 of the Trail Route changed from an on-road bike lane to an off-road 10 to 12 foot wide corridor.  (**Ex. 3**, p. 2-56; **Ex. 4**, p. 54)

    h.      The EA does not take into account or assess the effect cutting a minimum 14 foot wide swath in mature forest to accommodate construction of Segment 9 of the Trail route, nor does it analyze how a minimum 10-12 foot wide asphalt road will affect the ecosystem, including critical dune areas.

    i.      The EA does not address or evaluate the significant impact the preferred Alternative B route of Segment 9 of the Trail will have upon wildlife, particularly the critical deer habitat south of Bufka farm and north of Traverse Lake Road which will be dissected by the preferred Alternative B route.

    j.      The EA does not address or evaluate the significant impact the preferred Alternative B route of Segment 9 of the Trail will have upon private property and insuring that "[i]n developing the lakeshore, full recognition shall be given to protecting the private properties for the enjoyment of the owners," and insuring that "[i]n developing the lakeshore the Secretary shall provide public use areas in such places and manner as he determines will not diminish the value or enjoyment for the owner or occupant of any improved property located thereon." (16 U.S.C. §§ 460x(b) and 460x-5(d)).

    27.     Pursuant to the NEPA regulations, agencies are required to adopt NEPA implementing procedures.  40 C.F.R. § 1507.3.  NPS has done so by way of "Director's Order No. 12" (DO-12) which has "the force of law."  (DO-12, p. 2).

28.     Both versions of the EA are over 100 pages in length.  DO-12 directs that EAs in excess of 50 pages may be simply "an EIS in disguise," in which case a formal EIS should be prepared, which was not done in this instance.  (DO-12, p. 70)

29.     DO-12 directs that an EA should address the effect a project has upon the human environment so that potential significant impacts can be addressed by way of an EIS.  (DO-12, p. 27).  NEPA's regulations define the "Human Environment" as the "natural and physical environment, and the relationship of people with that environment."  (40 C.F.R. 1508.14)  Here, the EA does not speak at all to the significant negative impacts upon the human environment created by the preferred Alternative B route of Segment 9, including the significant negative impacts upon the residents of Traverse Lake Road, private property, and Cleveland Township Park.

30.     DO-12 warns against "trying to avoid an EIS rather than reducing impact through 'mitigated EAs.'"  (DO-12, p. 70).  Here, the Trail EA proposes to mitigate the effect of removing hundreds of mature trees along the Segment 9 Trail route by replanting 50 small trees.  (**Ex. 3**, p. 131)  This effort at mitigation is wholly inadequate.  DO-12 speaks directly to this by stating that the removal of a large number of mature trees and replacing them with seedlings is an inadequate mitigation effort.  (DO-12, p. 70)  In that case, DO-12 directs that an EIS should be prepared.  *Id.*

31.     DO-12 also warns that "[c]ourt battles on EAs have been lost on the basis that…the EA depended on mitigation to reduce impacts to below a 'significance' threshold."  (DO-12, p. 73)

C.    <u>**Finding of No Significant Impact**</u>

32.    In August, 2009, NPS issued its Finding of No Significant Impact ("FONSI") in connection with the Trail.

33.    Despite the fact that the EA is flawed, conflicting, incomplete, and contrary to NPS' own NEPA procedures, NPS relied upon the EA to conclude that the Trail posed no significant impact and does not require an EIS.  (**Exhibit 5**, FONSI, p. 9)

34.    Because the FONSI itself is based upon the flawed EA, the FONSI likewise is severely flawed, including:

a.    The FONSI states that "[n]o trailway development would occur on private lands."  (**Ex. 5**, p. 2)  Segment 9 of the Trail calls for the construction of a minimum 10-foot wide linear park directly on, over, or immediately adjacent to parcels of private property owned by the Individual Plaintiffs and the LTLPOA's other members.  (**Exhibit 6**, Photographs)

b.    DO-12 states that "[i]f you need several mitigation measures to avoid a significant impact, or if the mitigation measures are highly speculative or distant in time, you should carefully consider preparing an EIS instead of a mitigated EA."  (DO-12, p. 70).  The FONSI identifies <u>seven categories</u> of mitigation measures, with a total of <u>21</u> individual mitigation measures to be undertaken.

c.    Contrary to the EA, which scopes Segment 9 of the Trail route both in terms of impacts and cost as a <u>completely on road trail</u>, the FONSI states that the preferred Alternative B, Segment 9 Trail route "would be constructed in areas of very little previous disturbance."  (**Ex. 5**, p. 5)

d.    The FONSI states that there are "[n]o long-term major adverse or beneficial impacts" requiring an EIS.  (**Ex. 4**, p. 6)  It goes to state that "<u>moderate</u> adverse impacts to operations and maintenance are expected."  *Id.*  Both statements are completely contrary to the findings in the EA which state: "<u>At this time it is uncertain who will be responsible for trail operations and maintenance</u>…The impacts of the other actions described above would result in short term and <u>long-term, major impacts to operations and maintenance</u>.  <u>Alternative B's contribution to these cumulative impacts would be major</u>."  (**Ex. 3**, p. 98)  Thus, the NPS is simply ignoring the findings in its own EA identifying major adverse impacts by concluding that there are "no

highly uncertain, unique, or unknown risks identified during either the preparation of the [EA] or during the two public review periods." (**Ex. 4**, p. 7)

e.  According to the FONSI, "[l]ong term adverse impacts will occur to topography, wetlands and water quality, vegetation and wildlife, Michigan state-listed species, soils, socioeconomics, and operations and maintenance." (**Ex. 4**, p. 7)  Despite this statement, the NPS determined that there will be no significant impact because the Trail would be built "almost exclusively in previously disturbed areas." *Id.* This statement is directly at odds with NPS' statement in the FONSI that Alternative B "would be constructed in areas of very little previous disturbance." *Id.* p. 5.

f.  The FONSI states that the "trail proposal is included in the 2009 Final General Management Plan/ Wilderness Study/ Environmental Impact Statement (GMP)" for the Lakeshore. (**Ex. 5**, p. 1)  The GMP, however, contemplates that an EIS should be prepared before any such trail is built: "[A] hike/bike trail could be developed at the initiative of partners; <u>a separate study would be needed to make certain that such a trail would have no significant impact</u>."

g.  Appendix D to the GMP, detailing the proposed development of the Trail, states that "high use zoning does not imply the acquisition of private lands for the hike/bike trail."  Preferred Alternative B of Segment 9 is proposed to be routed directly over private property.

35.    Pursuant to NEPA's implementing regulations, NPS was required to cooperate with State and local agencies to the fullest extent possible in connection with the Trail.  40 C.F.R. § 1506.2.  Pursuant to DO-12, NPS was required to "consult local, state, and other federal agencies as part of scoping to determine all of the applicable requirements and any permits needed for Trail completion." (DO-12, p. 30)

36.    Both the EA and FONSI are silent on any cooperation with State and local agencies other than the comment in the FONSI that "[t]he selected alternative will not violate any federal, state, or local environmental protection laws." (**Ex. 4**, p. 8)  This is an incorrect statement.

37.    Part 353 of Michigan's Natural Resources and Environmental Protection Act (Sand Dune Protection and Management), requires the issuance of a permit by the Michigan Department of Environmental Quality (MDEQ) for any use within a critical dune area. M.C.L. 324.35304.

38.    The eastern end of Segment 9 of the preferred Alternative B Trail calls for construction of a minimum 14-foot wide corridor in critical dune areas which are more than 50 feet in height, have a slope greater than 1:3, and completely cover the road shoulder for a distance of more than 700 feet.  (**Ex. 1**, Photographs)  The Alternative B proposal for Segment 9 will require extensive cuts in the dunes and the construction of retaining walls in order to accommodate the Trail, a fact not addressed in the EA or the FONSI.

39.    Upon information and belief, NPS has not sought nor obtained a permit from MDEQ for the use of, or construction in, critical dune areas in connection with Segment 9 of the Trail.  Both the EA and FONSI are silent as to the  impact on critical dune areas or any contact with MDEQ, and the statement in the FONSI that "[c]ritical ecological areas have been avoided" is false.  (**Ex. 5**, p. 6)

40.    Routing Segment 9 of the Trail on the north side of Traverse Lake Road will require a stream crossing and negatively impact wetlands both of which will require a permit from MDEQ which has not been sought.  (M.C.L. 324.30102 and M.C.L. 324.30306)

41.    For that portion of Segment 9 of preferred Alternative B that is planned to be constructed in the Traverse Lake Road right-of-way, NPS is also required to obtain a right-of-way use permit from the Leelanau County Road Commission (LCRC).

Fraser Trebilcock

42.    Upon information and belief, NPS has not sought nor obtained a permit from LCRC for construction of Segment 9 of the Trail within the right-of-way of Traverse Lake Road.

43.    NEPA requires preparation of an EIS whenever a Trail's impact on the human environment may be significant.    In this regard, DO-12 states: "NEPA (sec. 102(2)(C)) requires you to prepare an EIS whenever your park proposes or approves an action whose impacts on the human environment may be significant…If something your park is proposing might have significant impact on the human environment, you <u>must</u> prepare an EIS."  (DO-12, p. 45)  (emphasis added).

44.    Both NEPA's implementing regulations and DO-12 set forth factors to be analyzed and considered in determining whether an impact is "significant," including:

a.    The degree to which public health and safety are affected;

b.    Unique characteristics of the geographic area, including site-specific characteristics relating to wetlands, or ecologically critical areas;

c.    The degree to which effects on the quality of the human environment are likely to be highly controversial; and

d.    Whether the action threatens a violation of federal, state, or local law or requirements imposed for the protection of the environment.  40 C.F.R. § 1508.27; DO-12, pp. 46-47.

45.    The EA concludes that "[d]evelopment of the Trailway would have negligible impacts on the population of the area both in the long and short term."  (**Ex. 3**, p. 91)  The FONSI likewise concludes: "There were no highly uncertain, unique, or unknown risks identified during either the preparation of the [EA] or during the two public review periods." (**Ex. 5**, p. 7)

46.    The EA and the FONSI, however, failed to take a critical or hard look at the significant impacts Segment 9 of the Trail route will have upon the human environment.  No studies or analyses were done relating to the impact that the anticipated 350,000-400,000 trail users or increased vehicular traffic will have upon the residents of Traverse Lake Road, private property, Cleveland Township Park or the health and safety of both trail users and residents.  This is despite the fact that portions of Segment 9 of the Trail are planned to be constructed very close to occupied residences across private property.  (**Ex. 6**, Photographs)

47.    Since the FONSI was issued, already constructed Trail segments have used a 20 foot wide cut in some areas.  This change in scope was not considered or reviewed as part of the EA, particularly as to Segment 9, and thus, the FONSI is inaccurate in its conclusion on the lack of significant impact.

48.    The FONSI references 37 written comments on all of the segments as part of the initial EA review and public comment period in October, 2008.  However, the FONSI fails to point out that 26 of the comments, or 70%, were strongly opposed to the Alternative B routing of the Trail on or near Traverse Lake Road.  Instead, the FONSI, in addition to ignoring the opposing views entirely, deems this strong opposition as not "highly controversial."  (**Ex. 5**, p. 6)

49.    NPS' course of proceeding throughout the planning process, particularly its failure to even acknowledge the overwhelming opposition to the preferred Alternative B of Segment 9 and change of scope pertaining to the Trail's width, suggests that the FONSI was a *fait accompli*, even before completion of the FONSI and contrary to NEPA's implementing regulations which mandate that information be made available to citizens and public officials "before decisions are made and before actions are taken."  40 C.F.R. § 1500.1(b).

50.     Both the EA and FONSI fail to address the violation of state and local requirements relating to critical dune and right-of-way permits if Alternative B of Segment 9 is built as currently proposed.

51.     The FONSI, issued in August, 2009, is now almost six years old and construction of Segment 9 of the Trail is not due to begin, at the earliest, until 2017. According to DO-12, use of an "outdated or inadequate document" relied upon to take original action requires initiation of the NEPA process and preparation of a new document for public review.  (DO-12, p. 47)

52.     The FONSI, issued in 2009, concluded that the proposed Alternative B Trail route along Traverse Lake Road would not significantly impact the natural or human environments despite the fact that, as of March 30, 2015, "the final route of Segment 9 has yet to be determined."  (**Exhibit 2**)

53.     All told, the EA and resulting FONSI are highly flawed, incomplete, contradictory, and fail to abide by NEPA, its implementing regulations, and DO-12.

### Count I
### Violation of NEPA- Failure to Disclose and Analyze Environmental Impacts

54.     Plaintiffs incorporate by reference paragraphs 1 through 53.

55.     NEPA requires federal agencies to analyze the foreseeable environmental impacts, including direct, indirect, and cumulative impacts, of "major federal actions."  42 U.S.C. § 4332(c)(I); 40 C.F.R. § 1508.7.  NEPA requires the analysis and consideration of cumulative effects which result from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions.  40 C.F.R. § 1508.25(a).

56.     The Trail, including Segment 9, constitutes major federal action pursuant to 40 C.F.R. § 1508.18.

57.    Pursuant to NEPA's regulations, an EA must "provide sufficient evidence and analysis for determining whether" a project will have a significant impact on the environment. 40 C.F.R. § 1508.9(a)(1).

58.    The data relied upon by NPS in making its FONSI in connection with Segment 9 of the Trail was inadequate and incomplete, and in the Trail EA, NPS failed to adequately disclose and analyze the likely effects of the Trail, including:

    a.    Impacts of changing Segment 9 from an on-road path using the existing chip-sealed surface to an off road minimum 14-foot wide corridor built in heavily wooded areas, wetlands, critical dune areas, and wildlife habitat.

    b.    Impacts upon wetlands and stream on the west end and the critical dune areas on the east end of Segment 9.

    c.    Impacts upon the human environment, and the ability of Traverse Lake Road residents to enjoy their homes due to noise and traffic.

    d.    Impacts caused by deforestation and excavation along the Trail trail route and up to 100 feet into the National Lakeshore.

    e.    Impacts to the public health and safety.

    f.    Impacts to the Trail's <u>actual</u> cost.

    g.    Impacts to the residents of Traverse Lake Road as a result of 350,000-400,000 trail users, with the majority of use during the summer months when vehicular travel is increased.

    h.    Impacts due to lack of any plan for maintenance of the Trail or the Cleveland Township Park located on Traverse Lake Road.

    i.    Impacts to wildlife habitat which will be dissected by proposed route.

    j.    Impacts to the scenic natural beauty of Traverse Lake Road or the resulting reduction of property values.

    k.    Impacts to owners of private property and their enjoyment of such property.

Fraser Trebilcock
LAWYERS

59.    Defendant NPS' actions as described above are arbitrary, capricious, and not in accordance with law, and without observance of the procedures required by law, within the meaning of the APA, 5 U.S.C. § 706.

<u>**Count II**</u>
<u>**Violation of NEPA- Failure to Prepare an EIS**</u>

60.    Plaintiffs incorporate by reference paragraphs 1 through 59.

61.    NEPA requires an EIS for any major federal action that may significantly affect the quality of the human environment.  42 U.S.C. § 4332(2); 40 C.F.R. § 1502.3.

62.    Defendant NPS violated NEPA by issuing a FONSI for the Trail because Segment 9 of the Trail raises issues that, at a minimum, should be evaluated by way of an EIS, including:

    a.    Segment 9 of the Trail, contrary to the FONSI, does significantly impact critical ecological areas including critical dune areas, mature forests, and wetlands.

    b.    Segment 9 of the Trail will have a significant impact upon the human environment, including the construction and use of the preferred Alternative B route.

    c.    Segment 9 of the Trail, as proposed in the preferred Alternative B route, will have a major adverse impact upon the natural and human environment, including the lack of a maintenance plan.

    d.    Segment 9 of the Trail will cause significant impacts to mature forests and the unique topography of the preferred Alternative B route.

    e.    Segment 9 of the Trail will significantly impact the ability of Traverse Lake Road residents to enjoy their property due to noise and traffic.

    f.    Segment 9 of the Trail, contrary to the FONSI, is controversial and will have a significant adverse impact upon the natural and human environments as made known by the public review comments.

    g.    Segment 9 of the Trail, without the appropriate permits issued by MDEQ and the LCRC, will violate state and local laws.

18

    h.      Segment 9 of the Trail was deemed to have no significant impact based upon an on-road trail using the existing chip-sealed surface and not a minimum 14-foot wide corridor at least 10 feet off the roadway as currently proposed.

    i.      Segment 9 of the Trail will have a significant impact because much of the preferred Alternative B route will be constructed in undisturbed natural areas.

    j.      Segment 9 of the Trail will have a significant impact upon the human and natural environment as evidenced by the need for 21 different mitigation measures in the FONSI.

    k.      Segment 9 of the Trail will have a significant negative impact upon public health and safety.

    l.      Segment 9 of the Trail will have a significant impact upon wildlife habitat.

    m.      Segment 9 of the Trail will have a significant negative impact upon private property, the enjoyment of such property, and property values along Traverse Lake Road.

    n.      Segment 9 of the Trail will have a significant impact upon critical dunes 50 feet in height with a slope greater than 1:3.

63.    Defendant NPS' actions as described above are arbitrary, capricious, and not in accordance with law, and without observance of the procedures required by law, within the meaning of the APA, 5 U.S.C. § 706.

## Count III
### Violation of NEPA- Failure to Analyze an Adequate Range of Alternatives

64.    Plaintiffs incorporate by reference paragraphs 1 through 63.

65.    NEPA requires an agency to "study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources."  42 U.S.C. § 102(2)(E). Agencies "shall rigorously explore and objectively evaluate all reasonable alternatives, and

for alternatives which were eliminated from detailed study, briefly discuss the reasons for their having been eliminated." 40 C.F.R. § 1502.14(a).

66.    In the "Purpose and Need" section of the EA (**Ex. 4**, § 2, p. 8), the stated goal of the Trail is to provide a continuous pathway from M-22 at the south boundary of Leelanau County, north to the National Lakeshore boundary at Good Harbor Bay.  The Trail is intended to provide a safe, alternative transportation opportunity for park visitors that connects the National Lakeshore's primary visitor sites and facilities, including beaches, trailheads and other points of interest.  *Id.*

67.    The EA contains a number of proposed alternatives for Segment 9 of the Trail (**Ex. 4**, Appendix), however, it does not analyze an alternative that would route Segment 9 of the Trail north off M-22 on Bohemian Road (a/k/a County Road 669) and ending at Good Harbor Bay in an area with facilities and beaches, with the option of continuing east and west on or adjacent to Lake Michigan Road along the lake shore in an area already designated as a recreational zone in the Master Plan of the National Lakeshore.

68.    This proposed route meets the stated goals of the Trail, uses existing land, roads and trails in the National Lakeshore, avoids sensitive ecological areas, significantly lessens the number of mature trees to be removed, and eliminates excavating critical dune areas.  It also significantly reduces construction costs, and eliminates the impact upon the human environment along Traverse Lake Road by avoiding constructing the Trail through a residential neighborhood or across private property.  Plaintiffs have advocated for this Segment 9 alternative route both publicly and directly to the NPS.  (**Exhibit 6**)

69.    The EA does not discuss this proposed route nor does it discuss why such an alternative was not considered.

Case 1:15-cv-00789-GJQ-PJG    ECF No. 1,  PageID.21    Filed 07/31/15    Page 21 of 23

70.    The FONSI states that "[a] number of other options were considered by the Trailway Committee during the planning process, but were eliminated due to excessive grading issues, impacts to private property, steep topography, [and] potential impacts on proposed wilderness or safety."  (**Ex. 5**, p. 4)  All of the foregoing reasons for abandoning other Trail route options exist in the preferred Alternative B route proposed for Segment 9, yet NPS has either ignored these factors in deciding to route Segment 9 down Traverse Lake Road or has not taken a hard look at other reasonable alternatives.  If the environmental factors considered in the EA of a 10 foot off-road asphalt trail in the preferred Alternative B were scored correctly (appendix, Table 17), Segment 9 would have the greatest environmental impact of any segment along the entire Trail.

71.    Defendant NPS' actions as described above are arbitrary, capricious, and not in accordance with law, and without observance of the procedures required by law, within the meaning of the APA, 5 U.S.C. § 706.

**Count IV**
**Violation of NEPA- Reliance on Incomplete, Misleading, and Inaccurate Data**

72.    Plaintiffs incorporate by reference paragraphs 1 through 71.

73.    NEPA requires agencies to use high quality information and accurate scientific analysis; disclose "any responsible opposing view;" "make explicit reference …to the scientific and other sources relied upon for conclusions in the statement; disclose any scientific uncertainties; and complete independent research and gather information if no adequate information exists (unless the costs are exorbitant or the means of obtaining the information are not known)."  40 C.F.R. §§ 1500.1(b), 1502.9(b), 1502.22, and 1502.24.

74.    Neither the EA nor the FONSI reference any studies or data used to support the conclusion that there is no significant impact to the human and natural environments,

including studies or data related to human and traffic impacts that Segment 9 of the preferred Alternative B route will have upon the residents of Traverse Lake Road and private property, destruction and dissection of wildlife habitat, impact on wetland areas, or excavation of critical dune areas.

75.     Neither the EA nor FONSI disclose opposing views to the preferred Alternative B route of Segment 9 despite the fact that 70% of the written comments received during the October, 2008 public review and comment period on <u>all</u> of the segments were in opposition to the preferred Alternative B route of Segment 9.

76.     The inconsistencies contained in the EA leads to an inaccurate analysis and presentation of the impact to the environment, whereas if the assessments on a 10 foot off-road asphalt path were done correctly, the proposed Segment 9 would have the greatest impact to the environment of any segment along the entire route.

77.     Because "the final route of Segment 9 has yet to be determined," the analysis and information contained in both the EA and FONSI cannot be accurate or complete. (**Exhibit 2**)

78.     NEPA requires that NPS take a "hard look" at the direct, indirect, and cumulative impacts that Segment 9 of the Trail, as proposed, will have upon the natural and human environments, and to do so, NPS must rely on complete and accurate information which it did not do.

79.     NPS violated NEPA by presenting and relying upon inaccurate and misleading information in the EA and FONSI, to wit: (i) evaluating the environmental impacts of an on-road trail while presenting Segment 9 of the Trail as an off-road trail; (ii) distributing a "Public Input Flyer" devoid of any reference to routing Segment 9 down Traverse Lake Road;

and (iii) issuing the EA containing an "Overall Trailway Segments Map" showing segment 9 being routed on M-22 and not Traverse Lake Road.

80.    Defendant NPS' actions as described above are arbitrary, capricious, and not in accordance with law, and without observance of the procedures required by law, within the meaning of the APA, 5 U.S.C. § 706.

## Prayer for Relief

**WHEREFORE** Plaintiffs respectfully requests this Court order the following relief:

A.    An order declaring that Defendant National Park Service has violated NEPA, and the APA for the reasons alleged above;

B.    Awarding Plaintiffs their reasonable attorneys' fees and costs incurred in this action pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

C.    All such other and further relief as this Court deems just, proper, and equitable.

*Respectfully Submitted,*

FRASER TREBILCOCK


By: s/ Thaddeus E. Morgan
Thaddeus E. Morgan (P47394)
124 W. Allegan, Suite 1000
Lansing, Michigan 48933
Telephone:  (517) 482-5800
Email: tmorgan@fraserlawfirm.com
Attorneys for Plaintiffs

July 31, 2015