UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LITTLE TRAVERSE LAKE PROPERTY OWNERS ASSOCIATION, DOUGLAS JONES, L. GENE MORSE and LINDA MORSE, in their capacities as CO-TRUSTEES of THE LEROY AN LINDA MORSE TRUST, MARY ANN SHUTZ, in her capacity as TRUSTEE OF THE MARY ANN SHUTZ TRUST, and MARCIA SKAJAERLUND,

Case No. 1:15-CV-789

HON. GORDON J. QUIST

Plaintiffs,

v.

NATIONAL PARK SERVICE,

Defendant.
_____/

## OPINION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

This case presents a challenge under the Administrative Procedure Act, 5 U.S.C. §§ 551-706, to Defendant National Park Service's adoption of a finding of no significant impact as to one segment, Segment 9, of the Leelanau Scenic Heritage Route Trailway Plan. The trail will be a non-motorized pathway that links southern Leelanau County with the Sleeping Bear Dunes National Lake shore at the North end of County Road 651. The entire trail will be built on Park Service property or existing public road rights-of-way. The challenged proposed portion of the trail, Segment 9, would run along the north side of Traverse Lake Road. Plaintiffs own property on the south side of Traverse Lake Road.

Plaintiffs allege that the Park Service violated the National Environmental Policy Act, 42 U.S.C. §§ 4321-4370, because it (1) failed to sufficiently disclose and analyze environmental

impacts in the environmental assessment, (2) failed to prepare a full environmental impact statement, (3) failed to analyze an adequate range of alternatives, and (4) relied on incomplete, misleading, or inaccurate data. Plaintiffs moved for summary judgment on all counts. (ECF No. 31.) The Park Service cross-moved for summary judgment on the grounds that Plaintiffs waived their arguments by failing to exhaust their administrative remedies and because the Park Service otherwise complied with the National Environmental Policy Act in preparing the environmental assessments and adopting the finding of no significant impact. (ECF No. 35.)

## I. BACKGROUND

Federal agencies must prepare an environmental impact statement for all "major federal actions significantly affecting the quality of the human environment." *Sherwood v. Tenn. Valley Auth.*, 590 F. App'x 451, 457–58 (6th Cir. 2014) (citing *Sierra Club v. Slater*, 120 F.3d 623, 628 (6th Cir.1997)). "Major Federal action includes actions with effects that may be major and which are potentially subject to Federal control and responsibility." 40 C.F.R. § 1508.18. The significance of an action's effects is determined by evaluating both the context of the action and the intensity of the impact. 40 C.F.R. § 1508.27.

Agencies prepare an environmental assessment if it is unclear whether or not a proposed action significantly will affect the environment. *Sherwood,* 590 F. App'x at 457 (citing 40 C.F.R. §§ 1501.4(c) and 1508.9). The environmental assessment is a preliminary document in which the agency must evaluate "the environmental impacts of the proposed action and alternatives." *Kentucky Coal Ass'n, Inc. v. Tennessee Valley Auth.*, 804 F.3d 799, 804 (6th Cir. 2015) (citing 40 C.F.R. §§ 1508.9, 1501.4(b)). The agency may issue a "finding of no significant impact" and proceed with the proposed actions if the agency determines that an environmental impact statement is not required. *Id.* (citing 40 C.F.R. §§ 1501.4(e), 1508.13).

2

The finding of no significant impact must "briefly present[] the reasons why proposed agency action will not have a significant impact on the human environment." *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 758, 124 S. Ct. 2204, 2210 (2004) (citing 40 C.F.R. §§ 1501.4(e), 1508.13.)

In October 2008, the Park Service published an environmental assessment of the trail that included analysis of various environmental impacts. The environmental assessment analyzed three alternatives: Alternative A was a trail "constructed in the M-22/M-109 rights-of-way to the extent possible, only deviating where necessary due to physical or environmental constraints." (PageID.1229); Alternative B, was a trail "in the M-22/M-109 rights-of-way, in many areas, but deviating from the highway corridor where possible to avoid physical or environmental constraints, provide access to natural, cultural, or recreation resources, and to promote a broader variety of experiences for the Trailway user" (PageID.1246); the environmental assessment also included a "no action" alternative, under which no Trailway would be constructed. Most importantly for the purposes of this case, Alternative A included a segment which tracked M-22, while Alternative B contained a segment that ran along Traverse Lake Road.

The Park Service held a 30-day comment period and an open house, ultimately receiving about 50 comments. The residents on Little Traverse Lake Road objected to various aspects of the proposed route, largely on the basis that it would increase traffic along Traverse Lake Road; that increased traffic would generate safety risks for hikers and bikers; that the trail would disrupt driveways, mailboxes, and utilities; that M-22 is a preferable route for the trail because it would channel trail users towards businesses along M-22; and that the trail would disrupt wildlife, habitat, and topography. (ECF No. 16-6 at PageID.1170-83, comments numbered 2, 8, 9, 11, 12, 13, 14, 16 -31, 37.) One comment proposed an alternative route. (ECF No. 16-6 at PageID.1177.)

The Park Service considered these comments and issued a second environmental assessment in March 2009 in which it changed the proposed Segment 9 from a path directly adjacent to Traverse Lake Road to one separated from the road by some distance. The Park Service again made the environmental assessment available for 30 days for public review and comment. No Plaintiff objected to the 2009 environmental assessment, and there was no comment on the 2009 environmental assessment regarding Segment 9. (ECF No. 16-3 at PageID.690; ECF No. 32-1 at 3795-97.) The Park Service issued a finding of no significant impact for the trailway project in August 2009 and selected Alternative B.

## II. DISCUSSION

### A. Waiver

"Persons challenging an agency's compliance with NEPA must 'structure their participation so that it ... alerts the agency to the [parties'] position and contentions,' in order to allow the agency to give the issue meaningful consideration." *Pub. Citizen*, 541 U.S. 752, 764, 124 S. Ct. 2204, 2213 (2004) (quoting *Vt. Yankee Nuclear Power Corp. v. Natural Res. Defense Council, Inc.*, 435 U.S. 519, 553, 98 S. Ct. 1197, 1216 (1978)). An objection must also be detailed enough to "allow the agency to rectify the alleged violation." *Karst Envtl. Educ. & Prot., Inc. v. Fed. Highway Admin.*, 559 F. App'x 421, 424 (6th Cir. 2014) (internal quotation marks omitted). "The question … is whether the claim raised in the administrative process was similar enough to that raised in the federal complaint that the agency was on notice that it must consider and decide the same claim now raised." *Id*. at 427. Failure to properly object at the administrative stage generally "forfeit[s] any objection" to the environmental analysis on that ground, but "an EA's or an EIS'[s] flaws might be so obvious that there is no need for a commentator to point them out specifically in order to preserve its ability to challenge a proposed action." *Pub. Citizen*, 541 U.S. at 764-65, 124 S. Ct. at 2214.

4

The Park Service argues that Plaintiffs forfeited their objections when they failed to comment on the 2009 environmental assessment. (ECF No. 35 at PageID.3820.) Plaintiffs argue that the comments on the October 2008 environmental assessment sufficiently alerted the Park Service to the issues now before the Court, or that the environmental assessment's flaws are so obvious that comments were unnecessary to preserve the challenge. (ECF No. 42 at PageID.3939-42.)

### 1. Failure to Comment on the March 2009 Environmental Assessment

The Park Service argues that the comments on the 2008 environmental assessment do not satisfy Plaintiffs' duty to object to the 2009 environmental assessment because "the proposed route for segment 9 changed between the October 2008 EA and the March 2009 EA." (ECF No. 44 at PageID.3965.) The Park Service changed the proposed layout of the trail in response to many comments on the 2008 environmental assessment that expressed concern for safety of hikers and bikers. The 2008 environmental assessment proposed a path that directly bordered the road, while the 2009 environmental assessment included a separation between the road and the path. (*See Id*.) The Park Service contends that this change was significant enough that the comments on the 2008 environmental assessment did not put it "on notice that it must consider and decide" the same issues a second time, and it "had every reason to believe that Plaintiffs' silence during the time for comment on the revised March 2009 EA conveyed tacit approval of the revised route, not continued objection." (*Id*. at PageID.3966.)

Although the Sixth Circuit has yet to directly address whether comments on one environmental assessment will preserve those issues as to a second or revised environmental

assessment,[1] the principles underlying the exhaustion requirement favor the Park Service. The Park Service issued a revised plan that addressed many of the concerns initially raised about Segment 9 and held another comment period. Plaintiffs knew how to "structure their participation" to allow the Park Service to consider these objections before issuing the finding of no significant impact, but failed to do so.[2] Instead of being able to respond to Plaintiffs' concerns, the Park Service is required to defend its analysis in court, which is precisely why "[t]he time to complain is at the comment stage, not after the agency has completed its decision making process." *Karst*, 559 F. App'x at 424 (6th Cir. 2014). Thus, this Court holds that Plaintiffs have waived their objections unless the comments on the 2008 environmental assessment sufficiently alerted the Park Service to the alleged deficiencies in the 2009 environmental assessment.

## 2. October 2008 Comments Raising Issues

### a. Failure to Disclose and Analyze Environmental Impacts

Count I alleges that the Park Service violated National Environmental Policy Act because it failed to disclose and analyze environmental impacts. (ECF No. 1 at PageID.16-17.) More specifically, Plaintiffs complain that the environmental assessment "fails to sufficiently consider the fact that… Segment 9 will be built in heavily wooded areas, wetlands, critical dune areas, and wildlife habitat." (ECF No. 31 at PageID.3778.) Some of the comments note that the area is heavily forested and that the construction would require the removal of trees. (*See, e.g.,* ECF No. 16-6 at PageID.1176-1179.) One comment goes so far as to say that Segment 9 would be

---

[1] The court in *Sierra Club v. United States Forest Serv.*, 878 F. Supp. 1295 (D.S.D. 1993), *aff'd*, 46 F.3d 835 (8th Cir. 1995) concluded that the plaintiffs failed to exhaust their administrative remedies. This case is not binding in the Western District of Michigan.

[2] According to Plaintiffs, they are seasonal residents and, it is suggested, did not receive actual notice of the 2009 Park Service proposed plans.

"environmentally dreadful." (*Id*.) But the Park Service points out that no comment challenges the sufficiency of the environmental assessment's analysis. Instead, the comments express general displeasure with the segment. Plaintiffs have waived this objection.

### b. Failure to Prepare Environmental Impact Statement

No comment on the October 2008 environmental assessment requested that the Park Service prepare an environmental impact statement. A comment from Jerry Leanderson complains that "[g]reat care, expense and environmental impact studies would be required to route a new path" along Traverse Lake Road, presumably because Mr. Leanderson thought "the area at the west end of Little Traverse Lake, where the stream passes under the road, is very low and should be considered wetlands." (ECF No. 16-6 at PageID.1172.) This comment does not object to the any particular part of the Park Service's analysis, and is not even objecting to the *lack of* an environmental impact statement. Plaintiffs have waived this objection.

### c. Failure to Analyze Alternatives

Count III alleges that the Park Service failed to consider an adequate range of alternative routes, specifically that it failed to consider "an alternative that would route Segment 9 of the Trail north off M-22 on Bohemian Road (a/k/a County Road 669)." (ECF No. 31 at PageID.3791.) Assuming, arguendo, that comments on the 2008 environmental assessment are capable of raising issues, this comment preserves this issue for review insofar as it makes a discrete, identifiable objection which is essentially identical to the issue now before this Court. The merits of this comment are addressed below. *See* Part B.

### d. Reliance on Incomplete, Misleading, and Inaccurate Data

No comment in the October 2008 environmental assessment raised any issue with the accuracy or completeness of the Park Service's data. Plaintiffs' motion for summary judgment

details that the Park Service improperly analyzed environmental effects in Table 17 of Appendix G (*see* PageID.1376).  No comment on the 2008 environmental assessment takes issue with Table 17 or the other data used.  Plaintiffs have thus waived this objection.

### 3. Obvious Errors

Plaintiffs argue that flaws in the environmental assessment were "so obvious" that objections are preserved despite the lack of comments, but they make no attempt to support this position with case law or anything more than conclusory statements.  "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (internal quotation marks omitted).  Accordingly, Plaintiffs have waived this argument.

### B.  Failure to Analyze Alternatives

Agencies must evaluate reasonable alternatives to the proposed action.  42 U.S.C. § 4332(2)(C)(iii).  "As a general matter, 'the range of alternatives that must be discussed' under the National Environmental Policy Act 'is a matter within an agency's discretion.'"  *Save Our Cumberland Mountains v. Kempthorne*, 453 F.3d 334, 342 (6th Cir. 2006) (quoting *Friends of Ompompanoosuc v. Fed. Energy Regulatory Comm'n*, 968 F.2d 1549, 1558 (2d Cir.1992)).  Agencies must consider the objective and environmental consequences of the project in exercising this discretion.  *Id*. (citing *Citizens Against Burlington, Inc. v. Busey*, 938 F.2d 190, 195 (D.C. Cir. 1991)).  The "duty to consider environment-friendly alternatives is less pressing" when an agency properly issues an environmental assessment as opposed to an environmental impact statement.  *Id*. (citing, among others, *Native Ecosystems Council v. United States Forest Serv.*, 428 F.3d 1233, 1246 (9th Cir.2005)).

The stated purpose of the action was to create a "nonmotorized trailway that will provide a continuous scenic pathway from M-22 and Manning Road at the south boundary of Leelanau County to the north boundary of the Lakeshore at Good Harbor Bay, County Road 651, all within Leelanau County." (ECF No. 16-3 at PageID.771.)

### 1. Definition of Objective

Plaintiffs first argue that the stated purpose of ending the pathway at Good Harbor Bay was so "rigid and inflexible" that it forecloses reasonable consideration of alternatives. (ECF No. 31 at PageID.3792.) Courts reject an agency's definition of purpose as unreasonably narrow when it "compels the selection of a particular alternative." *Theodore Roosevelt Conservation P'ship v. Salazar*, 661 F.3d 66, 73 (D.C. Cir. 2011) (citing *Citizens Against Burlington,* 938 F.2d at 195). The stated purpose in the instant case allowed for the selection of at least two different routes for Segment 9: Alternative A, tracking M-22, and Alternative B, tracking Traverse Lake Road. Moreover, the maps in the administrative record show that a path to the end of County Road 651 could have tracked several other roads. (*See, e.g.,* No. 16-4 at PageID.796.) The Park Service's stated purpose was not unreasonably narrow.

### 2. Failure to Consider County Road 669 Alternative

Plaintiffs also argue that the Park Service failed to consider a reasonable range of alternatives because it did not consider routing Segment 9 North along County Road 669 (a/k/a Bohemian Road), ending the trail at that road's Northern terminus. (ECF No.31 at PageID.3791.) Whatever advantages this route may have over the proposed routes, it nonetheless conflicts with the purpose of ending the trail on County Road 651. It was reasonable for the Park Service not to consider this alternative route.

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs have failed to exhaust their administrative remedies and Defendant is entitled to summary judgment as to all counts.

A separate order will enter.


Dated: December 21, 2016                             /s/ Gordon J. Quist
                                                                          GORDON J. QUIST
                                                                    UNITED STATES DISTRICT JUDGE